CITY OF SPRINGFIELD ex rel. GILSONITE CONSTRUCTION COMPANY, Appellant, v. SCHMOOK et al., Respondents.

St. Louis Court of Appeals, June 5, 1906.

1. **MUNICIPAL CORPORATIONS: Special Taxbills: Time for Completing Contract.** Where a general ordinance of a city provided that every one who entered a contract with the city for making improvements should complete the improvement according to the plans and specifications and ordinances within the time agreed on, and where a contractor entered a contract to complete certain pavement within ninety days from the date of entering the contract "unless delayed by injunction or legal proceedings or by any unavoidable cause," and where the work was not completed until long after the expiration of ninety

days from entering the contract, the taxbills issued thereon for the work were invalid unless the delay was caused by the contingencies mentioned.

2. ——: ——: ——: **Question of Fact.** In an action on such taxbills, whether the delay in finishing the work according to contract was caused by unsuitable weather, and whether, notwithstanding the weather, the work was finished in a reasonable time, were questions of fact for the trial court.

3. ——: ——: ——: ——. And in such case, where the contract required the work to be finished in ninety days and the taxbill was invalid unless the finishing was prevented by injunction suits or other unavoidable causes, it was a question of fact for the trial court to determine whether the causes of the delay were unavoidable so as to bring them within the exception.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*M. C. Early* and *Barbour & McDavid* for appellant.

(1)   Under the law governing cities of the third class the taxbills sued on are assignable and collectible by the holder thereof and are *prima facie* evidence of the regularity of the proceedings, of the validity of the taxbills, of the doing of the work, and the validity of the charge against the property therein described to the charge stated in the taxbill. A general denial constitutes no answer. The defects relied on must be specially pleaded and affirmatively proved. Sec. 5858, R. S. 1899, same as Laws 1893, page 65. City Ordinances, sec. 605; City of Carthage v. Badgley, 73 Mo. App. 123; City of Springfield v. Baker, 56 Mo. App. 637; Moberly v. Hogan, 131 Mo. 19, 32 S. W. 1014; Asphalt Paving Co. v. Ullmann, 137 Mo. 560, 38 S. W. 458. (2)   The defendants' fifth contention is, that the work was not completed within ninety days, as they claim was required by the contract. The contract must be construed in connec-

tion with the resolutions and ordinances authorizing it. Resolution No. 377 does not provide any time limit for completion. Ordinance No. 2572-A, ordering the work and advertisement for bids does not provide any time limit for completion. The advertisement of the city engineer for bids does not provide any time limit for completion. Ordinance No. 2578, accepting the bid and awarding the contract does not provide any time limit for completion. If a time limit was to be fixed it was the duty of the council to to fix it. The doctrine is firmly established that the council could not delegate this authority to the mayor and street committee, who signed the contract on the part of the city. They did not even attempt to delegate the authority to the mayor and street committee to fix ninety days as a time limit for the completion of the work. They simply assumed the authority. (3) In determining what is a reasonable time the circumstances of each separate case must be considered. It is a fact to be determined by the jury like any other fact in a case. In this case, the bad weather; the freezing weather; the refusal of the car company to improve its tracks; the two suits that caused the delay; the change of the specifications; the order of the city to discontinue the work; the fact that no damage to defendants is either alleged or proven by reason of the delay; the fact that defendants stood by and saw the work done and completed and their property benefited without complaint or resort to the courts — all these things must be considered in determining what was a reasonable time. Under these conditions to hold these taxbills void, when no damage whatever has been caused to the defendants, would be to take away from the plaintiff the cost of its labor, money and material and give it to defendants and allow them without cost or expense to enjoy and reap the benefits of an improvement made at their request. Heman v. Gillian, 171 Mo. 258, 71 S. W. 163; Hill-O'Meara Co. v. Hutchinson, 100 Mo.

App. 294, 73 S. W. 318; Carlin v. Cavender, 56 Mo. 286; Hilgert v. Barber Asphalt Co., 81 S. W. (Mo. App.) 496; Ash v. Independence, 79 Mo. App. 74; Mastin v. Grimes, 88 Mo. 485; Godfrey v. Stock, 116 Mo. 403, 22 S. W. 733; Sparks v. Villa Rosa Land Co., 99 Mo. App. 489, 74 S. W. 120; Bryant v. Saling, 4 Mo. 522; McNew v. Booth, 42 Mo. 192; Salisburg v. Renick, 44 Mo. 556; Parsons on Contracts, sec. 662 (7 Ed.), p. 795; Bishop on Contracts, secs. 327, 1347; Hart v. Bullion, 48 Tex. 278; Quill v. Jacoby, 37 Pac. 524; Grant v. Bank, 35 Mich. 516; Greenwood v. Davis, 106 Mich. 230; Frame v. The Ella, 48 Fed. 569; Luschart v. Ogden, 30 Cal. 547; Waterman v. Dutton, 6 Wis. 265; Lindsey v. Police Jury, 16 La. Ann. 389; Smith v. Spratt Machine Co., 46 S. C. 511; Strange v. Wilson, 17 Mich. 341.

*W. D. Tatlow* and *John Schmook* for respondents.

(1)   In actions at law, decided by the trial court, in which a general verdict was rendered, and no finding of facts, declarations of law or instructions were requested, made or granted, the appellate court will not reverse the judgment, where there is substantial evidence to support the verdict.   Strode v. Abbott, 102 Mo. App. 172, 76 S. W. 644. (2) This court gives special recognition to the above rule when, in O'Mara v. St. Louis Transit Co., 102 Mo. App. 210, they say : "We are far from being satisfied with some verdict which, because supported by substantial evidence, we have to let stand." Spaulding v. City of Edina, 104 Mo. App. 53, 78 S. W. 302; Hamilton v. Boggess, 63 Mo. 233; Sutter v. Raeder, 149 Mo. 307-308, 50 S. W. 813; Caldwell v. Bank, 100 Mo. App. 29, 71 S. W. 1093.   (3)   Failure to complete the work provided for within the time stipulated in contract renders taxbills void.   Springfield v. Davis, 80 Mo. App. 574; Trust Co. v. James, 77 Mo. App. 616; McQuiddy v. Brannock, 70 Mo. App. 535; Rose v. Trestrail, 62 Mo.

App. 352; Neill v. Gates, 152 Mo. 585, 54 S. W. 460; Barber Asphalt Paving Co. v. Ridge et al., 169 Mo. 376, 68 S. W. 1043; Springfield General Ordinances, sec. 584.

GOODE, J.—This is an action to enforce the lien of three taxbills issued to pay for paving the street in front of a lot in the city of Springfield. Those of the defendants in whom the title to the lot is vested are the heirs or devisees of John Schmook, deceased, who was the owner of the lot when the proceedings in question occurred. The other defendants are interested as trustees or beneficiaries in deeds of trust. The property lies on the west side of Boonville street, a thoroughfare along which double street car tracks run. The improvement for which the taxbills were issued is an asphalt pavement and was laid by the Gilsonite Roofing and Paving Company, which assigned the taxbills to the Gilsonite Construction Company, to whose use the present action was brought. The judgment of the court below was in favor of the defendants. Several defenses were interposed, but the only one we find it necessary to consider is that the work was not completed within the time required by the contract between the city and the original contractor, the Gilsonite Roofing & Paving Company. The proceedings for the improvement of the street were started by two resolutions passed by the council of the city of Springfield, June 9, 1898. Under the ordinances of the city and the franchises by which the street railway company (the Springfield Traction Company) used the street, it was incumbent on it to pave that portion of the street occupied by its rails and two feet outside. One of the original resolutions declared it was necessary to improve the street by paving with asphalt that portion of the roadway on either side of the street car tracks and two feet from them, and the other resolution declared it was necessary to pave with the same

material the center of the street occupied by the car tracks and two feet beyond the outer rails and ordered the Traction Company to lay that paving. The other work was to be let by the city to a contractor to be done in conformity to specifications on file in the office of the city engineer. Bids for the work were advertised for by the city and that of the Gilsonite Company was accepted by an ordinance approved July 20, 1898. This ordinance said nothing about the time in which the work should be begun or finished; but the city entered into a contract with the Gilsonite Roofing & Paving Company, dated July 25, 1898, which contained a provision that the said company, as contractor, should complete the work according to specifications in ninety days from the time the contract took effect. We quote that clause of the contract:

"Now, therefore, the said party of the first part hereby agrees with the said city of Springfield, to do and complete said work according to specifications, without negligence, causing or tending to cause damage to private property for which the city might be held liable, furnishing all materials therefor at his own cost and expense, within ninety days from the time this contract goes into force and effect, according to such directions as the city engineer and street committee of the city of Springfield, may from time to time give in superintending the construction of said work, and in accordance with the plans and specifications of said work prepared by the city engineer for the letting of a contract for said work, and to the satisfaction and acceptation of the city engineer of the city of Springfield, and said specifications are attached hereto and made a part of this contract; provided, if the contractor is delayed by injunction or legal proceedings, or *by any unavoidable cause,* the time or completion shall be extended by the council covering said delay."

At the time the contract was executed, a general

ordinance of the city of Springfield was in force which provided that every person who should bid for the job of constructing, should enter into a written contract within ten days and complete the improvement according to the plans, specifications and ordinances within the time agreed on, without negligence tending to cause damage to private property. On September 13, 1898, the council directed the mayor to notify both the Springfield Traction Company and the Gilsonite Company to begin the improvement. Shortly afterwards the paving company started the work. The Traction Company refused to comply with the city's resolution directing it to put in asphalt paving between the tracks and two feet on either side and in consequence litigation arose between it and the city. On account of the action of the Traction Company, the mayor pro tem of the city served a written notice on the Gilsonite Roofing & Paving Company, October 17, 1898, directing it to cease work under its contract until the Traction Company could be compelled to proceed with the improvement it was bound to make, or until further notice from the city of Springfield.

The testimony tends to show that on receipt of this notice from the mayor, the paving company ceased work and shortly thereafter the weather became unsuitable for laying asphalt paving. The dispute between the city and the Traction Company resulted- in allowing the latter to pave that portion of the street it had to pave with brick instead of asphalt. On January 19, 1899, the mayor of the city notified the paving company to go on with its work, the controversy with the Traction Company having been settled. There is testimony that early in the spring, and as soon as the weather permitted, the Gilsonite Company went ahead with the improvement and completed it as quickly as possible. It was finished early in July, 1899. The contract called for its completion within ninety days from July 25, 1898,

unless the Gilsonite Company was delayed by injunctions, legal proceedings or some other unavoidable cause; in which case the period for completion should be extended by the council to cover the unavoidable delay. An attempt was made to prove that the acting mayor was authorized to serve notice on the Gilsonite Roofing & Paving Company to cease work until the dispute with the Traction Company was settled; but no such authority was, in fact, shown. In the court below no declarations of law were asked, or any findings of fact. At the conclusion of the evidence the court rendered a judgment in favor of the defendants; and on the facts the question for decision is, did it conclusively appear that the work was completed in due time so that the taxbills were valid; or was the court justified in holding completion was so long delayed that the contract was not complied with by the paving company and, therefore, the taxbills were void? When the particular ordinance which orders an improvement, provides that it must be completed within a certain time and the prescribed time is exceeded, taxbills cannot be collected. [Heman v. Gilliam, 171 Mo. 258, 71 S. W. 163.] The law seems to be the same way when the particular ordinance is silent regarding the time for completion; but there is a general ordinance relating to public improvements in force, requiring the work to be performed within the agreed time. [Allen v. Lobsap, 188 Mo. 692, 87 S. W. 926; Springfield v. Davis, 80 Mo. App. 574; Heman v. Gilliam, 171 Mo. loc. cit. 267, 71 S. W. 163.] The present contract was not rendered indefinite as to the time limit for finishing the work by prescribing a per diem forfeiture for failure to finish in the time stipulated, as was the contract is Heman v. Gilliam. The Davis case just cited, dealt with the same general ordinance of the city of Springfield with which we must deal in the present case, and the contract under which the work was done limited the time of completion to sixty days. Applying

the general ordinance to the contract, this court held that the intention of the city and of the contractor was to provide a definite and specified time for the completion of the work, to-wit; sixty days. In the case in hand the contract did not require the work to be done, at all events, within a certain time; that is, ninety days; but allowed some indulgence to the contractor in case it was delayed by injunction suits or other unavoidable causes, by stipulating that in such a contingency the council should extend the time for the completion of the work. If we apply the Davis case, we must hold that this contract read in connection with the general ordinance, made time of the essence of the agreement and required the work to be done within ninety days, barring certain named contingencies. Now that the contracting company was prevented or interfered with by injunction suits, is not contended, for no suits were brought against it. The contention is that it was hindered from prosecuting the work by a notification served on it by the city, which desired the paving company to await the settlement of the dispute with the Traction Company before going further with the work. So far as the record discloses, the service of this notice by the acting mayor of the city was without authority from the governing body of the city; that is, the council. But if we grant that the notice was a good excuse for pausing in the work, the fact confronts us that in January the paving company was notified to resume the work, as the difficulty with the Traction Company had been adjusted. The paving company was, therefore, at perfect liberty to go on with the improvement after January; and as only a week or so was required for its completion, it looks like the job might have been finished before July. The excuse assigned for not doing it sooner was that the weather was unsuitable throughout the winter and spring. But this excuse certainly raised

120 App.—4

an issue of fact for the court to determine. We are unable to say the evidence positively shows the weather stood in the way of performance of the work so that it could not be finished sooner, and, therefore, that it was finished in a reasonable time. What is a reasonable time for the doing of an act or contract is ordinarily a question of fact. [Burks v. Stam, 65 Mo. App. 455.] We can think of no instance in which the question would be more properly one of fact, to be found by the trier of the fact, than when it arises on a dispute about whether the state of the weather for several weeks was such as to interfere with the prosecution of a given kind of work. However, we do not agree with counsel for the plaintiff that the true construction of the contract, read in connection with the general ordinance, was to require the work to be done within a reasonable time. Our view of the contract is that it had to be finished in ninety days, unless finishing it in that time was prevented by injunction suits or other unavoidable causes. In any view of the matter it was for the court to decide whether the contractor was unavoidably prevented from finishing the job in ninety days; and surely it was for the court to say whether some unavoidable cause arose which hindered its completion earlier than July. The work extended seven or eight months over the stipulated time, during which interval the street, presumably, was torn up and in bad condition for travel. We detect in the record no facts compelling the conclusion that the paving could not have been finished much earlier than it was. As the parties raised no legal question on this branch of the case by declarations of law, it is presented to us as a question of fact.

Justice might be promoted by conforming the law of special assessments to that governing contracts for the erection of buildings. When a contractor for street improvements is guilty of no fraud or willful violation of his agreement, he ought to be allowed a recovery

*quantum meruit* against the property benefited, subject to penalties for delay and a right in the property owner to counterclaim for damages on that account, or for any other shortcoming which injures him. But in the present state of the law, we think the judgment of the court below must be affirmed. It is so ordered. All concur.